**ALHAMBRA FOUNDRY, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**and**

**South Bay Foundry, et al., Intervenors.**

**Court No. 83–4–00500.**

United States Court of International Trade.

Dec. 30, 1985.

---

Simonelli & Hall (Michael H. Hall, Washington, D.C., on the motion), for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, (A. David Lafer, Washington, D.C., on the motion), for defendant.

Brownstein, Zeidman & Schomer (David Amerine and Irwin Altschuler, Washington, D.C., on the motion), for intervenors.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

In this action plaintiffs challenge a final affirmative countervailing duty determination of the Department of Commerce, International Trade Administration (ITA) regarding iron-metal construction castings from Mexico. *See* 48 Fed.Reg. 8834 (1983). Defendant and defendant-intervenors oppose the motion and claim that the final determination, issued pursuant to 19 U.S.C. § 1303 (1982), is supported by substantial evidence upon the administrative record.

## Background

Subsequent to plaintiffs' petition alleging that numerous governmental programs conferred bounties or grants upon the iron-metal construction castings industry in Mexico, the ITA made an affirmative preliminary determination and stated that it was investigating the alleged subsidization practices from January 1 to September 30, 1982. 47 Fed.Reg. 56377 (1982). In issuing the preliminary determination published on December 16, 1982, the ITA was required to use the "best information available" in accordance with 19 U.S.C. § 1677e, since the ITA had not yet received responses to its countervailing duty questionnaire from the Mexican government. On the basis of this information, presumedly much of it obtained from petitioners (*see* Record at 136, letter from plaintiffs), the ITA estimated the net bounty or grant to equal 40.53 percent *ad valorem.*

In the final determination reached February 17, 1983, the ITA determined the net bounty or grant to be 2.85 percent *ad valorem.* The verification report, however, was not placed in the record until March 8, 1983. Upon plaintiffs' motion for reconsideration of its motion to strike the verification report from the record and defendant's cross-motion for remand in order to allow all parties to provide the ITA with comments on the report and accompanying exhibits, the Court, on July 2, 1984, granted the cross-motion for remand. The ITA filed its remand results on September 11, 1984, and concluded that no changes in the final determination were warranted.

The final determination stated the following programs constituted countervailable subsidies:

(1) FOMEX [1] pre-export and export financing loans at preferential interest rates;

(2) FONEI [2] long-term financing at preferential interest rates;

(3) FOGAIN [3] priority industry/regionally targeted financing at preferential interest rates;

(4) State tax incentives; and

(5) Import duty reductions and exemptions (although the ITA found that the production facilities used in the manufacture of the subject product did not appear to have been imported).

The ITA determined that CEPROFI [4] tax credits conferred bounties or grants, but had not been granted for the production of merchandise subject to the investigation, and that the CEDI [5] program, also providing countervailable tax certificates, had been suspended.

The following programs were determined not to confer bounties or grants:

(1) Government control of Mexican iron and steel industries;

(2) Dual level currency exchange;

---

**1.** FOMEX (Fund for the Promotion of Exports of Mexican Manufactured Products) is a government trust which provides low-interest loans to Mexican companies to promote the manufacture and sale of exported products. 48 Fed.Reg. at 8834.

**2.** FONEI (Fund for Industrial Development) is a specialized financial development fund, administered by the Bank of Mexico, which grants long-term credit at below-market rates for the creation, expansion or modernization of enterprises and to foster industrial decentralization. 48 Fed.Reg. at 8835.

**3.** FOGAIN (Fund for the Guarantee of Development of Medium and Small Industry) provides financing at interest rates below prevailing commercial rates based upon whether a small or medium business has a designated priority status or based upon its geographical location. 48 Fed.Reg. at 8835.

**4.** CEPROFI (Certificates of Fiscal Promotion) are nontransferrable tax certificates used to promote the goals of NIDP. These tax credits are provided to Mexican companies for locating in certain regions, investing in certain infant industries, generating jobs, investing in new plants and equipment, and purchasing Mexican capital goods. 48 Fed.Reg. at 8836.

**5.** CEDI (Certificado de Devolucion del Impuesto), suspended by the Mexican Government in August 1982, was also a tax rebate. The certificates were direct export subsidies with their value equal to a percentage of the value of qualifying exports. 48 Fed.Reg. at 8836.

(3) Free zone and in-bond assembly programs; and

(4) COMESEC Mexican credit insurance at preferential rates.

Finally, the ITA determined that the following programs were not used by the iron-metal construction castings industry:

(1) Government-financed facilities;

(2) Mexican Institute for Foreign Trade (IMCE) promotional benefits;

(3) Trust for Industrial Parks, Cities, and Commercial Centers (FIDEIN) benefits;

(4) National Preinvestment Fund for Studies and Parks (FONEP) benefits;

(5) Favorable tax treatment;

(6) Discounts on Industrial Energy and Basic petrochemicals; and

(7) FOMIN[6] preferential financing.

Plaintiffs in this action now make the following challenges, as the Court discerns them, to the final determination of the ITA:

(1) the ITA failed to explain in its determination how it arrived at the benchmark interest rates used in calculating FOMEX and FONEI benefits;

(2) the ITA failed to properly determine the subsidy amounts from FONEI and FOGAIN financing;

(3) the ITA failed to fully investigate the extent of receipt of state tax exemptions, or free or low-priced land incentives;

(4) The ITA failed to properly calculate the benefit of a state tax exemption received;

(5) the ITA failed to investigate import duty reductions and exemptions for equipment purchased prior to the investigation;

(6) the determination that the receipt of a CEPROFI tax credit was connected only to merchandise not the subject of the investigation is unsupported by substantial evidence;

(7) the ITA's determination that the dual level currency exchange does not confer a bounty or grant is unsupported by substantial evidence;

(8) the ITA failed to investigate whether FOMEX loan guarantees conferred bounties or grants;

(9) the ITA's determination that none of the firms received IMCE benefits is unsupported by substantial evidence;

(10) the ITA failed to investigate benefits from FIDEIN industrial park programs;

(11) the ITA failed to investigate benefits provided by National Financeria, S.A;

(12) the ITA's determination that the Mexican construction castings industry did not receive discounts on basic petrochemicals or industrial energy supplies is unsupported by substantial evidence;

(13) the ITA failed to investigate whether foreign debt restructuring constituted a bounty or grant;

(14) the ITA failed to set forth in its determination the exchange rates used to calculate the net benefit received by the Mexican construction castings industry; and

(15) the verification report submitted subsequent to the final determination should not be included as part of the administrative record.

*Opinion*

Judicial review of a final countervailing duty determination is provided under 19 U.S.C. § 1516a(b)(1)(B) (1982), which requires the court to hold the determination unlawful if it is found "to be unsupported by substantial evidence upon the record, or otherwise not in accordance with law." The standard of review has been well explicated in many judicial decisions, *see Carlisle Tire and Rubber Co. v. United*

---

**6.** FOMIN (Fondo National de Fomento Industrial) operates as a trust fund and provides funding to companies through stock acquisition or the provision of convertible loans at rates below those of commercial lending institutions. 48 Fed.Reg. at 8837.

*States,* —— CIT ——, 622 F.Supp. 1071 (1985), but is essentially a limited review of the agency determination, insuring that agency conclusions are reasonably drawn from some evidence, more than a mere scintilla, in light of the record as a whole. However, the court is not placed in the position of having to weigh the evidence. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). With these considerations in mind, the Court concludes that twelve of the determinations and conclusions contested by plaintiffs in this action are supported by substantial evidence upon the record. In those instances where the Court is not able to affirm the administrative determinations, it is primarily because information in the record and the briefing is not sufficiently clear to enable the Court to meaningfully review the issues or to determine what actually transpired during the investigation. These three issues—challenge two to the calculation of FONEI and FOGAIN benefits, challenge four to the calculation of the state tax benefit, and challenge fourteen to the failure to set forth exchange rates—must therefore be remanded to the ITA.

## 1. *Commercial Interest Rates*

█ In calculating the benefits from the Fund for the Promotion of Exports of Mexican Manufactured Products (FOMEX), the ITA used as a benchmark for the commercial rate of interest the national average commercial rate for comparable short-term peso or dollar-denominated loans during the first nine months of 1982 as determined from information supplied by the Department of the Treasury. 48 Fed.Reg. at 8835. The source of Treasury's information was in turn the Bank of Mexico's publication *Economic Indicators.* Administrative Record at 474–76. For the Guarantee and Development Fund for Medium and Small Industries (FOGAIN), the ITA used as their benchmark the national average commercial interest rate for comparable peso-denominated loans in 1981 as provided by the Department of the Treasury, 48 Fed.Reg. at 8835–36. For the Fund for

Industrial Development (FONEI), the ITA used the 1977 average commercial rate for peso-denominated loans as obtained from the Mexican government's *Diario Official. Id.* at 8835. Plaintiffs' contention that the determinations of benchmark interest rates must be explained is therefore unfounded. It is presumed that the Treasury Department acted with regularity in obtaining interest rate data. It was therefore reasonable for the ITA to rely on this information, as well as that provided by official publications of the Mexican government, as "the best information otherwise available" in determining its benchmark interest rates for purposes of this investigation. *See* 19 U.S.C. § 1677e (1982).

## 2. *Calculation of FONEI and FOGAIN Benefits*

█ Plaintiffs contend that the methodology used by the ITA in calculating these benefits failed to take into account all of the costs which would be incurred in obtaining commercial loans in Mexico. First, maintain plaintiffs, the ITA's methodology of comparing payment streams of hypothetical commercial loans using the benchmark interest rates with the payment streams of the subsidized loans disregarded the Mexican practice with respect to both commercial loans and subsidized loans of requiring the payment of interest at the beginning of loan periods. *See* Administrative Record at 146, 602, 576, 1116. According to plaintiffs, "[t]he result is reduction in the calculated benefit, resulting from treating each benefit as occurring one year too late in the loan period. The effect is to decrease the total grant equivalent, since each benefit is discounted for an extra year at the benchmark rate in the benefit calculation." Plaintiffs' brief at 19–20.

Plaintiffs, citing Administrative Record at 682–96, 576, allege that the ITA failed to account for 3-month holidays from the repayment of principle of certain FOGAIN loans, and further citing Administrative Record at 146, 602, that the payment of commissions and maintenance of compen-

sating balances for commercial loans were not taken into account.

In response to these contentions, defendant argues simply that "[t]he ITA's methodology does not have to be the most reasonable in order to be upheld by this Court nor need it be the methodology that this Court would have selected had it been the decision maker. *Asahi Chemical Industry Co. v. United States*, 4 C.I.T. 120, 123, 548 F.Supp. 1261, 1264 (1982)." Defendant's Brief at 18. While the Court agrees that the ITA in its discretion may choose one methodology or another in calculating the benefits of bounties or grants, any methodology employed must reasonably accurately reflect factual information in the administrative record. It does not readily appear from the record or the briefs that the ITA took into account in the calculation of FONEI and FOGAIN benefits the payment of "up-front" interest, 3-month holidays from the payment of principle on FOGAIN loans, and the payment of commissions and maintenance of compensating balances for commercial loans. Accordingly, the Court must remand these issues to the ITA to determine whether this additional information in the record as pointed out by plaintiffs has any significant impact upon the ITA's determination.

### 3. *State Tax Exemptions or Free or Low-Priced Land Incentives*

■ The Mexican government's response to the questionnaire indicated that none of the companies investigated received state tax exemptions. Administrative Record at 101–102, 256. During the verification, however, the ITA found that one of the foundries did benefit from a partial exemption of a state tax because it produced products exclusively for export. In light of this finding, as well as other evidence in the record that other of the firms also produced only for export, plaintiffs argue that the ITA's finding that only one of the firms received state tax exemptions is not supported by substantial evidence upon the record.

Although the Court should not weigh the evidence, "the Court must consider the record as a whole" and consider "evidence on the record which detracts from the substantiality of the evidence relied on by the agency in making its determination." *Carlisle Tire & Rubber Co. v. United States*, — CIT —, 622 F.Supp. 1071, 1075 (1985). Viewing the record as a whole, the Court is convinced that there is sufficient "evidence as a reasonable mind might accept as adequate to support [the] conclusion" that only one firm received state tax exemptions for exportation. *See Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). On-site verification at three other firms did not disclose receipt of state tax benefits. It appears that at least one of these firms also produced only for export. *See* Administrative Record at 259. The ITA's determination is therefore sustained.

■ Concerning land at reduced prices, plaintiffs have not met their burden of pointing to any evidence in the record detracting from the ITA's conclusion that none of the firms investigated received this benefit.

### 4. *Calculation of State Tax Benefit*

■ Plaintiffs also challenge the ITA's calculations of the state tax benefit as received by the one firm by pointing out that if the ITA's calculations are correct, wages paid by the firm over the investigative period amounted to less than .09 percent of total sales. Defendant avoids this argument, countering only that plaintiffs have failed "to demonstrate in a concrete fashion that the net amount of the benefit has in fact been undervalued." Defendant's Brief at 22. Intervenors state that the ITA's verification report explains the method of calculation in detail and as well sets forth the records used to support the calculation. The ITA's explanation consists entirely of the following:

> We examined a schedule showing how much Fundicion Tijuana would have had to pay for 1982 had it not received such

an exemption (M–1). The total tax amount for the period, January 1, 1982 through September 30, 1982 came to 260.23035.

The "records," or schedule referred to, consist solely of a column of unintelligible figures. *See* Administrative Record at 1065. There is no indication of where the numbers came from, who prepared them, or even what they purport to represent. This issue must therefore be remanded to the ITA for further clarification of the methodology employed by the ITA in calculating the amount of the state tax benefit received.

5. *Import Duty Reductions and Exemptions*

■ Plaintiffs contend that the ITA did not investigate import duty reductions and exemptions received for equipment imported prior to the 1982 investigative period. Although the ITA did find that *de minimus* benefits had been conferred under this program for certain tools imported from the United States, defendant claims that the verification report shows that none of the machinery or parts imported prior to 1982 was purchased from the United States. Since the record indicates that the ITA did inquire into the issue and plaintiffs have not overcome the government's presumption of correctness, the ITA's finding that only *de minimus* benefits from import duty reductions and exemptions is supported by substantial evidence on the record.

6. *Certificate of Fiscal Promotion (CEPROFI)*

■ The ITA determined that only one of the companies subject of the investigation received a CEPROFI tax credit, but for the manufacture of a product other than the iron-metal municipal construction castings under investigation and for a related increase in company employment. 48 Fed.Reg. at 8836. Plaintiffs contend that to the extent that the increase in employment was due to the production of municipal castings, the tax credit related to the employment increase is countervailable.

The Court finds, however, that the ITA's finding that the employment increase was related to the production of a product other than the castings under investigation is a reasonable inference from the record, which indicates that municipal castings were a small part of the company's production and that the production of such castings was stopped in 1981, while the CEPROFI credit was granted for an increase in employment in 1980, 1981 and 1982. Administrative Record at 608 and 610. Accordingly, the Court finds that the ITA determination concerning CEPROFI benefits is supported by substantial evidence and is in accordance with law.

7. *Currency Exchange Rates*

■ Plaintiffs argue that the ITA improperly considered the exchange rate program that became operational after the period of the investigation while ignoring the program that was in effect at the time of the investigation. The dual level exchange control system alleged by plaintiffs to be countervailable was itself not enacted until September 6, 1982, shortly before the close of the January 1 to September 30, 1982 period under investigation. The program actually analyzed by the ITA, however, was substantially modified, as announced in the *Diario Official* on December 13, 1982. This revised program would therefore apparently be the only one relevant to entries of the merchandise under investigation made after the publication of the ITA's affirmative preliminary determination on December 16, 1982. *See* Plaintiffs' brief at 26–27. The Court accepts as reasonable the ITA's consideration of the most current currency exchange program, which was in effect prior to the publication of the countervailing duty order on March 2, 1983, and the termination of the investigation. *See* C.F.R. § 355.6(b)(3).

8. *FOMEX Loan Guarantees*

Plaintiffs contend that the ITA did not investigate the FOMEX loan guarantee program. The ITA did, however, investigate the overall FOMEX program and

make a determination as to which firms received *any* FOMEX benefits. *See* Administrative Record at 589–91. Intervenors additionally point out that the FOMEX credit insurance program is operated by COMESEC. Intervenors' Brief at 38. The ITA explicitly determined that COMESEC Mexican credit insurance at preferential rates did not confer a bounty or grant. 48 Fed.Reg. at 8837.

### 9. *Mexican Institute for Foreign Trade Benefits (IMCE)*

■ IMCE promotes Mexican foreign trade and coordinates efforts stimulating foreign trade, apparently through a variety of means including general advertising and promotion of Mexican products in international markets, as well as the provision of information and assistance directly to manufacturers, merchants, distributors and exporters. Administrative Record at 620. The ITA has verified "that none of the companies exporting the merchandise under investigation used any of the services offered by the IMCE." 48 Fed.Reg. at 8837. Plaintiffs nevertheless contend that the ITA failed to adequately investigate and determine what subsidy benefits may be conferred upon the iron-metal construction castings industry from general advertising and promotion. *See e.g.,* Administrative Record at 278–84 (promotional questionnaire, firm list, catalog and advertisement apparently distributed by IMCE). Although the ITA could have perhaps done more in looking into this aspect, the Court finds the ITA's reliance on the questionnaire response and verifications at IMCE and the firms, which indicated that none of the firms had received IMCE benefits, was reasonable.

### 10. *Full Investigation of Industrial Park Programs*

■ Based on the preliminary determination that several programs required additional information, *see* Administrative Record at 177, plaintiffs allege that the ITA made no further effort to acquire the needed information. Among the programs are land at reduced cost and state tax incentives (dealt with *supra* pp. 407–408), FOMEX loan guarantees (dealt with *supra* p. 409), benefits provided by National Financiere, S.A., and benefits of industrial park programs.

The ITA's finding regarding industrial parks is supported by substantial evidence. The verification report clearly shows that none of the companies investigated are located in industrial parks and therefore do not receive benefits under the Trust for Industrial Parks, Cities and Commercial Centers (FIDEIN). *See* Administrative Record at 595.

### 11. *Full Investigation of National Financeria*

■ Plaintiffs allege that the ITA failed to investigate and make determinations regarding programs administered by National Financeria. The ITA made explicit determinations regarding FIDEIN and FONEP, both programs administered by the National Financeria. *See* 48 Fed.Reg. at 8837, *see also* Administrative Record at 598. The Court finds that the ITA's actions and determinations in this regard to be supported by substantial evidence and in accord with the law.

### 12. *Industrial Energy Discounts*

■ The ITA's determination, *See* 48 Fed.Reg. at 8837, that Mexican producers of iron construction castings did not receive discounts on basic petrochemicals or industrial energy supplies is sustained. The determination is supported by the Mexican government's questionnaire response, Administrative Record at 103, 256, Administrative Record at 598–99, and on-site review of electric bills for each company verified. Administrative Record at 599.

### 13. *Failure to Investigate Foreign Debt Restructuring*

■ Plaintiffs allege that the ITA failed to make any investigation or determination regarding certain programs brought to the attention of the ITA during the investigation, as would be required by 19

U.S.C. § 1677d. Defendant appears not to have responded to this issue at all in its brief, while intervenors argue essentially that since the ITA should have made a negative determination regarding these programs, the failure to amend the notice of investigation to include these programs constitutes harmless error. Intervenors assert further that there is a lack of any suggestion in the verification that the foreign debt repayment schedule was altered in any way. Given that plaintiffs have not pointed to any evidence in the record supporting their claim other than their own conclusory statements made during the administrative proceeding, the Court affirms the ITA in not investigating and making a determination regarding this issue.

### 14. *Exchange Rates*

 Plaintiffs challenge the ITA determination for failing to set forth the exchange rates used by the ITA in calculating the net benefit received by the Mexican iron castings exporters. Presumably plaintiffs are concerned with whether the exchange rates employed resulted in an undervaluation of the bounty or grant conferred. Defendant answers this contention in a footnote stating that the ITA, pursuant to 31 U.S.C. § 5151(c), uses exchange rates published by the Secretary of the Treasury. Defendant's Brief at 16, n. 5. Alternatively, intervenors allege that the exchange rates used were set by the Mexican government and cites the Administrative Record at 499–503. The Court is unable to discern from the record and the briefs what exchange rates the ITA in fact used in this case. Accordingly, the Court must order a remand to determine what exchange rates were used and if they were in accordance with law.

### 15. *Verification Report*

 Plaintiffs again challenge the conclusion of the verification report as part of the administrative record. Although the verification report was placed with the record subsequent to the final determination, the report consists of information and exhibits compiled prior to the final determination. Plaintiffs had the opportunity to comment on the verification report during the remand to the ITA. As the report does not appear to be a *post hoc* rationalization of the final determination, *see e.g., Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 419–20, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971), but rather a compilation of material gathered during the administrative proceeding, the verification report is properly part of the administrative record within the meaning of 19 U.S.C. § 1516a(b)(2)(A) (1982).

### CONCLUSION

In order to determine whether all of the ITA's determinations are supported by substantial evidence upon the agency record, the Court requires further clarification and determination regarding the following challenges:

(2) the calculation of FONEI and FO-GAIN benefits,

(4) the calculation of the benefit of the state tax exemption received, and

(14) the exchange rates used by the ITA in calculating the net benefit used.

With respect to plaintiffs' other challenges in this case, the Court finds that the ITA determinations are supported by substantial evidence upon the record. Plaintiffs' motion for judgment upon the agency record is therefore granted in part and denied in part, and the case is remanded for further action consistent with this opinion.