PPG INDUSTRIES, INC., Plaintiff

v.

UNITED STATES, Defendant.

VITRO FLEX, S.A. and Cristales Inastillables De Mexico, S.A., Plaintiffs,

v.

UNITED STATES, Defendant,

PPG Industries, Inc., L–N Safety Glass, S.A. De C.V., Defendants-Intervenors.

PPG INDUSTRIES, INC., Plaintiff,

v.

UNITED STATES, Defendant,

Vitro Flex, S.A. and Cristales Inastillables De Mexico, S.A., Defendants-Intervenors.

No. 85–02–00264.

United States Court of International Trade.

April 20, 1987.

Stewart and Stewart (Terence P. Stewart, Washington, D.C. on the motion), for plaintiff, PPG Industries, Inc.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Dept. of Justice (Platte B. Moring, III, Washington, D.C., on the motion), for defendant, United States.

Brownstein, Zeidman and Schomer (David R. Amerine and Irwin P. Altschuler, Washington, D.C., on the motion), for defendant-intervenors, Vitro Flex, S.A., et al.

Jones, Day, Reavis & Pogue (Jerome J. Zaucha, Washington, D.C., on the motion), for defendant-intervenors, L–N Safety Glass, S.A. de C.V.

## MEMORANDUM OPINION

CARMAN, Judge:

Defendant United States moves for severance of the original Court No. 85–02–00264 and Court No. 84–09–01322 from this consolidated case, Court No. 85–02–00264, and dismissal of these two actions for mootness. The third case under consolidation, Court No. 85–02–00198, which challenges the validity of the original countervailing duty order, is not included in this motion to sever and dismiss. Defendant-intervenors Vitro Flex, S.A., et al, support the motion. Plaintiff PPG opposes the motion. Defendant-intervenor L–N Safety Glass, S.A. de C.V. takes no position on the motion. Defendant's motion is granted.

## BACKGROUND

This consolidated case covers three separate actions challenging the countervailing duty investigation and determination of the International Trade Administration, United States Department of Commerce (ITA) concerning fabricated automotive glass from Mexico. In the first action, Court No. 84–09–01322, plaintiff PPG Industries, Inc. (PPG) challenges the ITA's decision not to initiate the investigation of two programs involving debt rescheduling and natural gas pricings alleged to constitute bounties or grants in the initiation of a countervailing duty investigation of automotive glass from Mexico. *Initiation of Countervailing Duty Investigation; Fabricated Automotive Glass From Mexico.* 49 Fed.Reg. 33919 (1984). The second action, Court No. 85–02–00264, involves PPG's challenge of certain aspects of the final affirmative countervailing duty determination of automotive glass from Mexico by the ITA. *Final Affirmative Countervailing Duty Determination and Countervailing Duty Order: Fabricated Automotive Glass From Mexico.* 50 Fed.Reg. 1906 (1985).

The third action, Court No. 85–02–00198, in which PPG is a defendant-intervenor, involves challenges to the final affirmative countervailing duty determination by Vitro Flex, S.A. and Cristales Inastillables De

Mexico, S.A. (Vitro Flex and Cristales), two Mexican manufacturers, producers, and exporters of the fabricated automotive glass at issue. Vitro Flex and Cristales contest, among other things, the validity of the ITA's final affirmative determination in the countervailing duty investigation of the subject automotive glass. Both Vitro Flex and Cristales are also defendant-intervenors in Court No. 84–09–01322. Vitro Flex and Cristales also challenge the ITA's determination PPG had standing to file a countervailing duty investigation petition involving fabricated automotive glass from Mexico. Court No. 85–02–00198 is not the subject of defendant's motion to sever and dismiss and remains as a separate pending action before this Court.

The ITA published its final affirmative countervailing duty determination and order, *Final Affirmative Countervailing Duty Determination and Countervailing Duty Order: Fabricated Automotive Glass From Mexico*, 50 Fed.Reg. 1906 (1985), on January 14, 1985 and directed the United States Customs Service (Customs) to suspend liquidation of all entries of fabricated automotive glass from Mexico (except that manufactured and exported by L–N Safety Glass) which are entered, or withdrawn from warehouse, for consumption, and to require a cash deposit or bond on this merchandise in the amounts equal to the estimated net bounty or grant.

50 Fed.Reg. at 1906. On January 2, 1986, Vitro Flex and Cristales "requested in accordance with § 355.10 of the Commerce Regulations an administrative review of the [countervailing duty order of January 14, 1985]." *Fabricated Automotive Glass From Mexico; Final Results of Countervailing Duty Administrative Review*, 51 Fed.Reg. 44,652 (1986). This requested administrative review applies to all three actions: Court Nos. 84–09–01322, 85–02–00198, and 85–02–00264.

These three actions, Court Nos. 84–09–01322, 85–02–00198, and 85–02–00264, were consolidated on July 19, 1985. All the parties submitted their briefs in these actions on or before April 7, 1986, and oral argument was scheduled for December 11, 1986. This Court rescheduled oral argument for February 5, 1986 to specifically address the present motion to dismiss upon notice of the ITA's issuance, on December 4, 1986, and subsequent publication, of the final results of the countervailing duty administrative review (751 review of automotive glass) and upon notice of defendant's intention to file the instant motion to sever and dismiss.

The results of the 751 review of automotive glass served as the basis for the actual assessment rate of the countervailing duties for the involved automotive glass entries and the cash deposits of estimated countervailing duties for the prospective entries pursuant to 19 U.S.C. § 1675(a). As a result of the 751 review of automotive glass, the ITA determined "the total bounty or grant during the period of review to be 2.45 percent *ad valorem* for 1984 and 0.17 percent *ad valorem* for 1985, the latter a rate the Department considers to be *de minimis.*" 51 Fed.Reg. at 44,652. The ITA indicated it would instruct Customs "to assess countervailing duties of 2.45 percent of the f.o.b. invoice price on any shipments of this merchandise entered, or withdrawn from warehouse, for consumption on or after October 24, 1984, and exported on or before December 31, 1984." 51 Fed. Reg. at 44,655. The ITA further indicated it would "instruct ... Customs ... not to assess countervailing duties for shipments of this merchandise exported on or after January 1, 1985 and on or before December 31, 1985." *Id.*

## DISCUSSION

The question presented is whether or not the issues, in an action challenging an ITA final affirmative countervailing duty determination, are rendered moot by the issuance of the ITA's final results of the countervailing duty administrative review (751 review)[1] before the Court has re-

---

1. Section 751 of the Tariff Act of 1930, as amended by the Trade and Tariff Act of 1984, 19   U.S.C. § 1675.

viewed and determined the issues presented in the action challenging the original countervailing duty determination. This Court holds the issues presented in the actions challenging the original countervailing duty determination filed by PPG, were rendered moot upon the completion and the issuance of the results of the 751 review of automotive glass.

The doctrine of mootness is based upon the premise: "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969). Federal courts, established under Article III of the United States Constitution, such as this Court, "lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies ... [;] a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983) (citation omitted).

Certain corollaries of the mootness doctrine have been established which bear direct application on the motion before this Court. One such corollary is "the federal courts will not give advisory opinions." *Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968), *quoting* C. Wright, *Federal Courts* 34 (1963). Another corollary is "no justiciable controversy is presented ... when the question sought to be adjudicated has been mooted by subsequent developments...." *Id.* at 95, 88 S.Ct. at 1949 (footnote omitted). Yet, it must always be remembered "that '[j]usticiability is ... not a legal concept with a fixed content or susceptible of scientific verification. Its utilization is the resultant of many subtle pressures....'" *Id.* at 95, 88 S.Ct. at 1949 (quoting *Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961)).

Defendant states that because the results of the 751 review will control the actual assessment of duties and rates of deposits for future entries of the merchandise in question, the challenge of the original countervailing duty determination could not result in this Court providing any presently effective or meaningful remedy. Any recalculated subsidy rate determined on a remand would not serve as the basis for actual duty assessments or deposits of estimated duties; these assessments and deposits will be based upon the 751 review results. Therefore, according to defendants, any decision rendered by this Court in favor of plaintiff would have only an advisory effect, clearly impermissible for a court established by Article III of the Constitution. Defendant-intervenors concur with this argument.

Plaintiff, on the other hand, argues the relief sought consists of more than a recalculation of duty rates: "the chief effect of judicial review of original agency determinations is the corrective effect the Court's review will have upon the agency's treatment of the issues involved in the subsequent [751] reviews, as well as in other cases involving the same issues." Plaintiff PPG Industries, Inc.'s Opposition To Defendant's Motion to Dismiss at 16, *PPG Industries, Inc. v. United States,* Consolidated Court No. 85–02–00264. Such issues, as exemplified in this action, could consist of the faulty interpretation of countervailing duty law or the incorrect utilization of methodologies by the ITA.

A countervailing duty investigation is initiated by the ITA upon receipt of a proper petition by an interested party or upon a decision by the ITA that information available warrants such an investigation, pursuant to 19 U.S.C. § 1671a. The ITA must issue a preliminary countervailing duty determination, pursuant to 19 U.S.C. § 1671b, within a statutorily set amount of days after the initiation of an investigation. If the preliminary determination is affirmative in establishing a reasonable basis exists to believe or suspect a subsidy is being provided with respect to the merchandise, then the ITA is required to include an estimate of the net subsidy in the determination and:

(1) shall order the suspension of liquidation of all entries of merchandise sub-

ject to the determination which are entered, or withdrawn from warehouse, for consumption on or after the date of publication of the notice of the determination in the Federal Register,

(2) shall order the posting of a cash deposit, bond, or other security, as it deems appropriate, for each entry of the merchandise concerned equal to the estimated amount of the net subsidy, and

(3) shall make available to the Commission all information upon which its determination was based and which the Commission considers relevant to its injury determination, under such procedures as the administering authority and the Commission may establish to prevent disclosure, other than with the consent of the party providing it or under protective order, of any information to which confidential treatment has been given by the administering authority.

19 U.S.C.A. § 1671b(d) (1980 & Supp.1985).

Within 75 days after the preliminary determination prescribed in § 1671b(d), the ITA must issue a final countervailing duty determination pursuant to 19 U.S.C § 1671d. The purpose of the final countervailing duty determination is to establish the basis for a final countervailing duty determination order and to set estimated duties from the date thereon. The International Trade Commission (ITC) is also involved in a separate injury determination of the imported merchandise and if found to be affirmative, the ITC will notify the ITA of such an affirmative finding. The ITA then must publish a countervailing duty order within seven days which:

(1) directs customs officers to assess a countervailing duty equal to the amount of the net subsidy determined or estimated to exist, within 6 months after the date on which the administering authority receives satisfactory information upon which the assessment may be based, but in no event later than 12 months after the end of the annual accounting period of the manufacturer or exporter within which the merchandise is entered, or withdrawn from warehouse, for consumption,

(2) shall presumptively apply to all merchandise of such class or kind exported from the country investigated, except that if—

(A) the administering authority determines there is a significant differential between companies receiving subsidy benefits, or

(B) a State-owned enterprise is involved,

the order may provide for differing countervailing duties,

(3) includes a description of the class or kind of merchandise to which it applies, in such detail as the administering authority deems necessary, and

(4) requires the deposit of estimated countervailing duties pending liquidation of entries of merchandise at the same time as estimated normal customs duties on that merchandise are deposited.

19 U.S.C.A. § 1671e(a)(1)—(4) (1980 & Supp.1985). *See* 19 C.F.R. 355.36 (1985).

Administrative reviews of the final countervailing duty determination, otherwise known as section 751 reviews, are provided for in section 751 of the Tariff Act of 1930, as amended by the Trade and Tariff Act of 1984, 19 U.S.C. § 1675, where, upon request, the ITA is required to:

(A) review and determine the amount of any net subsidy,

(B) review, and determine (in accordance with paragraph (2), the amount of any antidumping duty, and

(C) review the current status of, and compliance with, any agreement by reason of which an investigation was suspended, and review the amount of any net subsidy or margin of sales at less than fair value involved in the agreement,

and shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.

19 U.S.C.A. § 1675(a)(1)(A)—(C) (1980 & Supp.1985). The 751 review must be performed, upon request, during each 12 month period from the anniversary date of the publication of a countervailing duty

order.[2] If there is no request, pursuant to 19 C.F.R. § 355.10(d), "Commerce instructs Customs to assess duties on entries in the relevant review period at rates equal to the cash deposit or bond required at the time of entry." *British Steel Corp. v. United States,* — CIT —, 647 F.Supp. 928, 929 n. 2 (1986), *appeal dismissed* (Fed.Cir.1987).

The function of a 751 review, as stated in *British Steel,* is:

> twofold: first, on the basis of the information obtained during the review, Commerce calculates the amount of subsidies obtained by the company in the review period and liquidates the entries in that period according to the rates calculated; second, Commerce then uses the same figure to set the estimated duty rate for the following year, according to which deposits on entries in that year will be required.

*Id.* at 929 n. 1.

■ It is of signal importance to understand the basis for the *actual* assessment or collection of countervailing duties and deposit rates on future entries subsequent to the 751 review *is* the 751 review results. *After the 751 review has been completed, neither the actual assessment of duties nor the estimation of duty rates for future entries are based on the net subsidy determined in the final countervailing duty order and determination. See Alhambra Foundry v. United States,* — CIT —, 635 F.Supp. 1475 (1986). In the instant case, any remand directing the ITA to alter the amount of deposit rates determined in the final affirmative countervailing duty order, after the 751 review has already been published establishing the countervailing duties to be assessed or deposited on future entries, would be futile since the remand could never affect the amount of the actual countervailing duty assessments nor the deposits of estimated duties. The results of the 751 review have finally fixed the actual assessments and have set new estimated deposit rates for future entries.

The Court has had opportunities in the past to address similar issues. In *Alhambra Foundry v. United States,* — CIT —, 626 F.Supp. 402 (1985) (motion for judgment upon agency record partially granted and remanded to agency for further action), the Court reviewed a final affirmative countervailing duty determination, affirmed the ITA on some of the challenges asserted by the opposing plaintiff, and remanded the case to the ITA regarding the remaining three challenges. Subsequent to the remand order, the ITA completed its first annual 751 review pursuant to 19 U.S.C. § 1675(a) and moved to vacate the remand order. *Alhambra Foundry v. United States,* — CIT —, 635 F.Supp. 1475 (1986) (motion to vacate granted and judgment entered). The Defendant Government contended that because:

> the results of this review will serve as the basis for the actual duty assessment on any unliquidated entries covered by the final determination, as well as for the cash deposits of estimated duties for future entries ... the results of the remand would have no practical effect since they will never be used for duty assessment nor for deposits of estimated duties.

*Alhambra,* 635 F.Supp. at 1475.

The Court concurred in its slip opinion. Citing, with approval, *Silver Reed America, Inc. v. United States,* — CIT —, Slip Op. 85–51 (May 1, 1985) (motion to vacate granted and judgment entered), the Court in *Alhambra* indicated a remand would serve no purpose and went on to say:

> [r]eversal of the ITA on any of the remaining three issues could do no more than reflect an increase in the amount of net bounties or grants bestowed by the Mexican government (which increase may or may not be reflected in the

**2.** Prior to the 1984 amendment, 751 reviews were commenced automatically by Commerce initially starting within 12 months of the coun-

tervailing duty order. *See* section 1675 of the Trade Agreements Act of 1979; *See also, British Steel Corp.,* 647 F.Supp. at 929 n. 2.

record of the more recent administrative review).

*Alhambra,* 635 F.Supp. at 1476.

In *Silver Reed America, Inc. v. United States,* 7 CIT 23, 581 F.Supp. 1290 (1984), the Court remanded an antidumping determination to the ITA for reconsideration of, among other things, plaintiffs' claim for a level of trade adjustment. The Defendant Government moved for, among other things, vacatur of the remand because the remand was no longer appropriate after the publication of the administrative review determination. *Silver Reed America, Inc. v. United States,* Slip Op. 85–51 (May 1, 1985). The Court agreed with the Defendant Government's position and found the actual duty assessment rate and estimated duty deposits were governed by the record before the ITA in the 751 review under 19 U.S.C. §§ 1673e(c) and 1675(a) and not by the record in the final affirmative less than fair value original countervailing duty determination challenged by the plaintiffs. Therefore, a recalculation of dumping margins on remand would have had no prospective effect regarding actual duty assessments of deposits of estimated duties. The Court, in *Silver Reed,* went on to say "under the statutory framework applicable here, judicial review must be based upon the administrative record of the particular proceeding resulting in the challenged determination." *Id.* at 7. *See* 19 U.S.C. §§ 1673e(c), 1675(a) and 1516a(a)(2)(A) and (B).

The Court in *Silver Reed* took pains to state:

As previously noted, any factual findings in the present case on remand to ITA regarding the level of trade issue, and the Court's review thereof, could not have prospective application because that issue must be resolved on the basis of the record before ITA in the particular review proceeding. To reiterate, with respect to matters of law, the Court's decision in [the remand order and opinion] has precedential effect in cases involving the level of trade issue in subsequent administrative reviews. However, the amount of the actual antidumping duties

to be assessed and cash deposits for estimated duties to be collected upon specific entries must be based upon the facts adduced in the administrative review covering those particular entries.

*Id.* at 9–10.

The determination under the 751 review consists of findings of fact adduced from the record containing new information presented to the ITA during the 751 review. This information is not necessarily the same information presented during the original determination. Also, a more precise procedure is employed in the 751 review, which sets the actual assessment of the duties, than is employed in the original countervailing duty determination, which sets the estimated duty deposit rates. *See Al Tech Specialty Steel Corp. v. United States,* 745 F.2d 632 (Fed.Cir.1984). Therefore, in the instant case, the Court's review of the ITA's findings of fact on the final affirmative countervailing duty determination would have no prospective application on future administrative reviews.

The Court, in *Cabot Corp. v. United States,* —— CIT ——, 620 F.Supp. 722 (1985), *appeal dismissed,* 788 F.2d 1539 (Fed.Cir.1986), was faced with a situation similar to that which was found in *Alhambra,* 626 F.Supp. 402; and *Alhambra,* —— CIT ——, 635 F.Supp. 1475. In *Cabot,* the plaintiff had challenged the ITA's final affirmative countervailing duty determination regarding carbon black from Mexico. The Court sustained the ITA's determination in part and reversed the determination in part, remanding the case to the ITA for further investigation and redetermination. The ITA completed its 751 review and then moved for vacatur of the remand order and for entry of a final judgment. Defendant argued that because neither the actual duty assessment nor the cash deposits of estimated duties could or would be based upon the final affirmative determination and order, there were no entries, present or prospective, which could be affected by any change that might have been found upon the remand. Therefore, the amount of net subsidy found in the final determination and order challenged would have no pro-

spective effect, and any review of such by a court would, in effect, constitute an advisory opinion.

The Court granted the motion, vacated the remand, and entered final judgment "affirming the final affirmative countervailing duty determination and order on carbon black from Mexico except for the following matter for which this action was remanded to the [I.T.A.] in Slip Op. 85-102...." *Cabot Corp. v. United States,* No. 83–07–01044 (CIT Nov. 20, 1986) (order granting motion for partial vacatur and final judgment). As was true in *Silver Reed,* Slip Op. 85–51, the decision in *Cabot* had *stare decisis* effect on matters of law in subsequent administrative reviews.

In *Alhambra, Silver Reed,* and *Cabot,* the Court ruled on certain legal issues and remanded to the agency for further findings. The 751 reviews were completed *after* the remand orders had been issued, *but before* the agency had completed the remand proceedings. The Government, in each case, moved to vacate the remand and enter final judgment. Final judgments were issued which provided opportunity for appellate review. No appeal was taken and, therefore, there was no appellate review of the legal determination of the Court. The judicial determinations on the legal issues made in the original proceedings had precedential effect, *i.e., stare decisis,* in the subsequent 751 reviews.

In *British Steel Corp. v. United States,* 6 CIT 200, 573 F.Supp. 1145 (1983),[3] the Court was faced with a situation where the plaintiffs filed an action challenging the ITA's final countervailing duty determination concerning steel products. During the pendency of the matter, Commerce conducted the annual 751 reviews of the countervailing duty order for the periods 1983–84 and 1984–85.[4] The plaintiff then moved, in the same action, to enjoin liquidation of the 1985–86 entries of merchandise pending a final decision in the original action contesting the 1983 final affirmative countervailing duty determination. *British Steel Corp. v. United States,* —— CIT ——, 647 F.Supp. 928 (1986), *appeal dismissed* (Fed. Cir.1987).

The Court ruled, on plaintiffs' motion, the plaintiffs could not

by means of ... enjoining liquidation of the 1985–86 entries, enlarge the scope of the existing action, which involves a challenge to the 1983 final affirmative countervailing duty determination, to embrace plaintiffs' new and totally different claim that Commerce refuses to conduct a section 751 review covering the 1985–86 entries.

*Id.,* 647 F.Supp. at 930. The Court went on to say:

Moreover, the duty assessment rate for the 1985–86 entries is not governed by the administrative record or remand proceedings in this action [*i.e.,* the final determination challenge]. If plaintiffs are entitled to an administrative review under section 751 for the 1985–86 entries, assessment of countervailing duties for those entries would be governed by the results of that administrative review based upon the record therein.... Hence, regardless of the outcome of plaintiffs' new claim that a section 751 review should be conducted, the disposition of the remand in the present action will have no prospective effect upon the duty rate to be assessed in liquidation of the 1985–86 entries.

*Id.* at 930–931 (footnote omitted).

The plaintiff in *British Steel* also raised an additional issue arguing the Court

---

**3.** The *British Steel* action has resulted in a number of slip opinions. *See generally British Steel Corp. v. United States,* —— CIT ——, Slip Op. 86–136 (December 19, 1986) [Available on WESTLAW, DCT database]; *British Steel Corp. v. United States,* —— CIT ——, 649 F.Supp. 78 (1986); *British Steel Corp. v. United States,* —— CIT ——, 647 F.Supp. 928 (1986), *appeal dismissed* (Fed.Cir.1987); *British Steel Corp. v. United States,* —— CIT ——, 632 F.Supp. 59 (1986); *British Steel Corp. v. United States,* —— CIT ——, 605 F.Supp. 286 (1985), appeal docketed, No. 85–2385 (Fed.Cir. May 20, 1985); *British Steel Corp. v. United States,* 7 CIT 65, 583 F.Supp. 586 (1984); and *British Steel Corp. v. United States,* 7 CIT 1, 578 F.Supp. 421 (1984).

**4.** Under the provisions of the statute then in effect, the 751 review for the 1983–84 period was commenced automatically. The 751 review for the 1984–85 period was requested by British Steel pursuant to section 751 of the Tariff Act of 1930 as amended in 1984.

973

should exercise its equitable powers to enjoin the liquidation of the 1985–86 entries because: "the 1985–86 entries are covered by Commerce's final countervailing duty determination ... and thus the remand results in the present action ... govern the methodology for the duty assessment rate on those entries irrespective of the results of a section 751 review." *Id.* at 931. The Court disagreed with this argument and stated:

> Clearly, countervailing duty assessment for the 1985–86 entries for which plaintiffs seek to enjoin liquidation is not governed by Commerce's final affirmative determination of April 27, 1983 nor by the results of the remand in the present action. The duty assessment rate for the entries covered by the countervailing duty determination and order (and the deposit rate for the subsequent period) are governed by the results of the first annual review under section 751.... Since the countervailing duty assessment for the 1985–86 entries is not governed by either the 1983 countervailing duty determination contested in the present action nor by the results of remand, this court has no jurisdiction in this case under section 1516a(c)(2) to enjoin liquidation of the 1985–86 entries.

*Id.* at 931.

After the issuance of the Court's order, in the above *British Steel* decision, the plaintiffs appealed to the Court of Appeals for the Federal Circuit seeking review of the lower court's determination concerning whether or not the remand proceedings in the action challenging the 1983 countervailing duty determination and order govern the liquidation of the 1985–86 entries. Defendants, meanwhile, moved for a vacatur of the remand order and entry of a final judgment affirming the ITA's final affirmative countervailing duty determination on the grounds intervening circumstances rendered the present action moot. In view of

the pendency of the appeal, the Court denied the defendant's application without prejudice to renew after final disposition of the appeal and continued the Court's order of October 15, 1986 suspending all proceedings. *See generally British Steel Corp. v. United States,* —— CIT ——, Slip Op. 86–136 (December 19, 1986); *British Steel Corp. v. United States,* —— CIT ——, 649 F.Supp. 78 (1986). The appeal was subsequently dismissed on March 31, 1987 by the appellate court.

■■■ It is clear from the analysis of the cases discussed above the results of the 751 review govern the actual assessment of countervailing duties and future deposit rates.[5] If the Court were to enter a remand order to the ITA, any "factual findings on remand and recalculation[s] ... relating to the time period and entries embraced by the final ... determination, would have no prospectively binding effect in subsequent administrative reviews...." *Silver Reed,* Slip Op. 85–51 at 9. In addition, with no remand issued, the completion of the 751 review leaves the unresolved legal questions to be resolved on a challenge to the 751 review. In the present case, the Court is asked to give relief where none is needed and none can be given. Any relief granted in the form of an opinion would be advisory at best. Such action by this Court is impermissible under Article III of the United States Constitution.

■■■ Plaintiff PPG argues this case is not moot and should not be dismissed because it falls within an exception to the mootness doctrine. This exception is known as the "capable of repetition, yet evading review" branch of the law of mootness. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Applying this exception to the instant action, PPG main-

5. Since 1984, a proper request to the ITA to conduct a 751 review has been required as a condition precedent to begin the 751 review. Hence, if no request is made, there will be no 751 review undertaken and no 751 review subject to judicial scrutiny. Of course, judicial review of the original final countervailing duty determination and proceedings will be available. It is only when a 751 review has been completed that judicial scrutiny of the previous underlying countervailing duty order as to deposit rates is rendered moot.

tains the original countervailing duty determination is of too short duration to allow complete judicial review, and the issues raised are likely to be subjected to the same agency action in the future. Although this Court agrees the issues presented are capable of repetition, it disagrees the issues will evade review. The liquidation [6] of entries covered by a 751 review are governed by that review; whereas a final affirmative original countervailing duty determination establishes whether or not an order should be issued and establishes an estimation for the rate of duties. Judicial review will occur after the 751 review when PPG can challenge the actual assessment of duties and estimated deposit duties as well as the methodology employed by the ITA. PPG may also seek injunctive relief to prevent the liquidation of entries upon the completion of the 751 review and obtain judicial review of agency action. *See Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed.Cir.1983). In point of fact, such injunctive relief was granted by this Court in *PPG Industries, Inc. v. United States*, Court No. 86–12–01546 (CIT Dec. 22, 1986) (order granting application for preliminary injunction), —— CIT ——, Slip Op. 87–3 (January 9, 1987) [Available on WESTLAW, DCT database]. The issues raised in the challenge of the original final countervailing duty determination can be renewed in the challenge of the 751 review and will be subject to proper judicial scrutiny. Furthermore, issues raised concerning the ITA's decision not to investigate the two programs, which were the subject of Court No. 84–09–01322, can also be renewed and subject to judicial review in the challenge of the 751 review, since these questions do not go to the validity of the countervailing duty determination and order.

PPG further contends if the relief sought, in the instant case, is held to be moot and the only viable remedy is to raise its challenges in a new action on the 751 review, such a result would deprive interested parties of effective judicial review of countervailing duty determinations contrary to the congressional intent to provide for judicial review of determinations pursuant to 19 U.S.C. § 1516a and 19 U.S.C. § 1671d. The foregoing statutory provisions clearly authorize judicial review of countervailing duty determinations, but not when such review becomes moot upon the completion of the 751 review proceedings. In addition, all challenges to the agency's final original countervailing duty determination will not be rendered moot upon completion of the 751 review. For example, a challenge to the validity of the issuance of the final original countervailing duty determination, which is the situation in Court No. 85–02–00198, is not rendered moot by the completion of the 751 review.

## CONCLUSION

The two actions before this Court, Court Nos. 85–02–00264 and 84–09–01322, consolidated under Court No. 85–02–00264, have ceased to be actual cases or controversies in which this Court may grant effective relief. Under these circumstances, it would be foolish to commit the resources of this Court (and possibly the ITA) to meaningless proceedings that could, at best, result in only an advisory opinion. It is not the Court's function "to guide any administrative body; rather the function ... is to review the determinations made by the administrative body." *United States Coalition For Fair Canadian Lumber Imports v. United States*, 5 CIT 150, 155, 563 F.Supp. 838, 842 (1983). Once the 751 review of automotive glass was completed, the final countervailing duty determination had no practical effect on the rate of deposits of future estimated duties, and thus the challenge to the original final countervailing duty determination became moot.

Because these two actions, Court Nos. 85–02–00264 and 84–09–01322, consolidated under Court No. 85–02–00264, have become moot and because this Court cannot provide any effective relief, this Court has no jurisdiction to hear these actions, consist-

---

**6.** Liquidation is defined as: "the final computation or ascertainment of the duties or drawback accruing on an entry." 19 C.F.R. 159.1 (1985).

ent with the mandate of Article III, and therefore the defendant's motion to sever and dismiss these actions is granted.