FABRICAS EL CARMEN, S.A., de C.V., et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

Court No. 85-04-00558.

United States Court of International Trade.

Feb. 17, 1988.

Green & Hillman, Richard G. Green and Ben L. Irvin, Washington, D.C., for all plaintiffs other than Derivados Acrilicos.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., Jeanne E. Davidson, Civil Div., U.S. Dept. of Justice, for defendant.

## OPINION AND ORDER

RESTANI, Judge:

Defendant moves to vacate the portion of this court's previous decision requiring remand. *Fabricas El Carmen, S.A., et al. v. United States*, 12 CIT ——, 672 F.Supp. 1465 (1987). Defendant further moves to dismiss this action challenging the final affirmative countervailing duty determination of the United States Department of Commerce, International Trade Administration (ITA). *Certain Textile Mill Products from Mexico*, 50 Fed.Reg. 10,824 (Mar. 18, 1985). Defendant argues that the results of the first administrative review of this determination, *Certain Textile Mill Products from Mexico*, 52 Fed.Reg. 45,010 (Nov. 24, 1987), have rendered the remand moot.

## FACTS

On October 7, 1987, this court denied certain challenges to ITA's final determination that a certain program bestowed countervailable benefits. 672 F.Supp. 1465. One of the arguments rejected by the court was plaintiffs' contention that losses due to Mexico's exchange rate system either negated any possible basis for finding that the program bestowed a subsidy, or resulted in net subsidy of zero. The remaining issues involved the methods ITA used to arrive at specific amounts of net subsidies, but it does not appear that other methods would have entirely eliminated any finding of net subsidy. Plaintiffs do not now argue that this is a possibility under the court's opinion. With regard to three of plaintiffs' methodology challenges, the court found ITA's determination neither based on substantial evidence nor in accordance with law. Accordingly, the case was remanded to ITA for correction of errors. ITA was ordered to report its results in 45 days.

On November 20, 1987, prior to the time allowed for reporting the remand results, ITA filed the instant motion.

## ARGUMENTS

Defendant argues that this court's remand order should be vacated, and this action dismissed, on the ground that "intervening circumstances [ITA's first administrative review of its final affirmative countervailing determination and order] have rendered the remand moot ... [and that] unless vacated, the remand order would require this Court to issue an advisory opinion contrary to Article III of the Constitution." Defendant's Motion for Vacatur of Remand Order and to Dismiss at 1. Defendant explains that

even if the amount of the subsidy in this case were revised upon remand, such a finding would have no practical effect because the adjusted subsidy could not be used for duty assessment or as the deposit rate on future entries. Thus, no entries—present or prospective—can be affected by any change that may result from recalculation of the original duty deposit rate upon remand.

*Id.* at 2–3. Defendant relies for support of its position, in part, upon the court's opinions in *PPG Industries, Inc. v. United States*, 11 CIT ——, 660 F.Supp. 965 (1987), *Alhambra Foundry v. United States*, 10 CIT ——, 635 F.Supp. 1475 (1986) and *Silver Reed America, Inc. v. United States*, 9 CIT 221, Slip Op. 85–51 (May 1, 1985).

Plaintiffs do not dispute the correctness of the court's prior opinions, but submit that this case is distinguishable in that in the final results of the administrative review ITA has ignored completely the court's instructions in remanding the underlying matter. In addition, plaintiffs argue that

Since administrative reviews are almost routinely requested, if ITA's position is accepted by the Court, ITA is in a position to negate any order of this court for a remand simply by waiting until the last minute and then coming down with its final administrative review determination which blithely repeats all the errors

the Court has instructed it to correct. ITA high-handedly tells the Court (page 6 of its memorandum) that plaintiffs may start all over again with a suit seeking judicial review of the final results of its administrative review. As if the Court calendars are not already sufficiently overloaded, ITA would require aggrieved parties to go through a chain of lawsuits to get a determination of an issue—and perhaps never get a determination because ITA evades the Court's direction by attempting to nullify it through publication of an administrative review—in this case, publication with an effective date after the due date of its response to the Court's remand.

Plaintiffs' Memorandum in Opposition at 3.

## DISCUSSION

The court has found, on previous occasions, that the publication of the results of a 751 [1] administrative review may in some cases warrant vacatur of this court's pending order of remand to ITA regarding the underlying final determination. *Alhambra Foundry v. United States*, 10 CIT —, 635 F.Supp. 1475 (1986) (vacating a remand order in a review of a countervailing duty determination and *Silver Reed America, Inc. v. United States*, 9 CIT 221, Slip Op. 85–51 (May 1, 1985) (vacating a remand order in a review of an antidumping duty determination). *See PPG Industries, Inc. v. United States*, 11 CIT —, 660 F.Supp. 965 (1987) (actions challenging countervailing duty investigation and determinations dismissed as moot). In *Alhambra*, the court previously had remanded a countervailing duty determination to ITA for further clarification and determination regarding certain issues bearing upon the calculation of certain benefits, but not for redetermination of whether such benefits constitute countervailable subsidies. The court relied upon *Silver Reed* in support of its holding that a remand would serve no purpose, because the results of the intervening 751 administrative review would serve as the basis for the actual assessment of duties on past entries covered by the review, and for cash deposits on future entries.

Although there are some factual distinctions to be drawn among the cases, the essential reasoning underlying the *Alhambra, Silver Reed* and *PPG Industries* decisions is applicable here. Central to this reasoning is an understanding of the limited scope of ITA's investigation phase, which may culminate in a final determination and order, and of this court's jurisdiction over the various separate determinations which take place over the life of a proceeding. *See* 19 C.F.R. §§ 353.11 & 355.6 (1987) (definitions of "investigation," "determination" and "proceeding") and 19 U.S.C. § 1516a(a)(2) (1982 & Supp. III 1985) (review of determinations on record).

Countervailing duty determinations and orders, which are part of the investigative phase of a countervailing duty proceeding, 19 C.F.R. § 355.6(b), provide for provisional measures such as the suspension of liquidation of merchandise entered after a preliminary determination and for the setting of rates for cash deposits of estimated duties in accordance with calculations of net subsidies set forth in ITA's preliminary and final determinations.[2] The actual assessment of countervailing duties, however, does not occur until after ITA's countervailing duty order has been published.

---

**1.** The term "751 review" refers to the fact that section 751 of the Tariff Act of 1930, as amended, which is codified at 19 U.S.C. § 1675 (1982 & Supp. III 1985), provides for this review.

**2.** Specifically, in an affirmative preliminary determination, ITA identifies subsidy programs, estimates net subsidies and orders the suspension of liquidation of the subject merchandise and the posting of deposits or bonds equal to ITA's estimated net subsidies. 19 U.S.C. § 1671b(b) & (d) (1982 & Supp. III 1985) and 19 C.F.R. § 355.28(a) & (d) (1987). In cases such as this, where an injury determination is not required, 19 U.S.C. § 1303 (1982), ITA combines its final affirmative determination with a countervailing duty order. 19 C.F.R. § 355.36 (1987). Countervailing duties are again estimated, suspension of liquidation is continued, the posting of deposits or bonds of such estimated duties are ordered pending liquidation of entries, 19 U.S.C. § 1671(c)(4) & (d) (1982 & Supp. III 1985), 19 C.F.R. § 355.33(f) (1987) and provisions are made for the future assessment of countervailing duties. 19 U.S.C. 1671e(a) (1982 & Supp. III 1985), 19 C.F.R. § 355.36.

Assessments are then made on past entries on an annual basis, either as part of a 751 administrative review or, under current law, if a review is not specifically requested, at the instruction of ITA pursuant to its regulations providing for assessment at the cash deposit rate in effect at the time of entry. 19 U.S.C. § 1675(a) (1982 & Supp. III 1985), 19 C.F.R. 355.10(d) (1987). *British Steel Corp. v. United States*, 11 CIT ——, 647 F.Supp. 928, 930–31 (1986) *appeal dismissed as moot and remanded for vacatur* No. 87–1050 (Fed.Cir. April 1, 1987) *vacated in part* 661 F.Supp. 68 (CIT 1987) (vacating denial of preliminary injunction). *See British Steel*, 11 CIT ——, 649 F.Supp. 78, 80–81 (1986).

A remand of an original countervailing duty determination which results in ITA's recalculation of the amount of net subsidies compels ITA to set new cash deposit rates for new entries, and if no review is ultimately requested for the period covering those entries, in ITA's assessment of duties on those entries at that same rate. 19 U.S.C. § 1675(a), 19 C.F.R. § 355.10(d), *British Steel*, 647 F.Supp. at 930–31. Once the final results of the 751 review are published, however, any recalculation of deposit rates by ITA in a remand of the original determination has no effect on new entries because applicable deposit rates are set by the 751 review. 19 U.S.C. § 1675(a)(1), 19 C.F.R. § 355.10(c)(8)–(9). *See PPG Industries*, 660 F.Supp. at 970, *Alhambra*, 635 F.Supp. at 1476, *Silver Reed*, 9 CIT at 224. The past entries covered by the 751 review period are no longer the subject of any deposit rates, but rather, are the subject of a completed final assessment determination made in that 751 re-

view. *Id.* Thus, the remand does not affect them.[3] The remaining past entries, occurring after the 751 review period—December 31, 1985—but before the review's publication date—November 24, 1987—will be assessed in accordance with subsequent reviews, if requested, or at the cash deposit rate at the time of entry. 19 U.S.C. § 1675(a), 19 C.F.R. 355.10(d), *British Steel*, 647 F.Supp. at 930–31. Therefore, if no review is requested for such periods, it is possible that final assessments on these entries could be based upon ITA's calculation of net subsidies in the final determination under review in this case. As such assessments are based on the amounts deposited at the time of entry, however, recalculation upon remand in this case also would have no effect on this group of entries.[4]

Plaintiffs may not enlarge the scope of the existing action, involving a challenge to the final countervailing duty determination, to embrace challenges to ITA's subsequent 751 administrative reviews. *See Silver Reed*, 9 CIT at 224–25; *British Steel*, 647 F.Supp. at 930. Any 751 review must be challenged in a separate action, based upon the particular administrative record before the agency at the time of that 751 review.

The situation with which plaintiffs find themselves presented in this case reflects the fact that they have challenged ITA's determination of the amount of net subsidies in the investigative stage of this countervailing duty proceeding.[5] At that stage, ITA's determination of the amount of net subsidies has limited significance and effect, which are superceded by ITA's subsequent determination of net subsidies in 751 administrative reviews. At the administra-

3. In this case, the entries covered by the 751 review period—January 3, 1985, to December 31, 1985—will have countervailing duties assessed at the rate set forth in that review. Any differences between the amount of estimated deposits posted upon entry and the actual amount assessed is either collected or refunded. 19 U.S.C. § 1671f (1982).

4. Plaintiff may of course obtain relief regarding this category of entries by filing a subsequent request for a 751 review. Moreover, no one has argued that prior to final assessment the court may order refunds of *deposits* already made or

further collections to increase past deposit amounts. Such adjustments are made at the assessment stage, and appropriate interest is paid or collected at that time. 19 U.S.C. § 1671f, 19 C.F.R. § 355.40 (1987).

5. Aside from using a challenge to ITA's method of calculating net subsidies as a means of disputing the very countervailability of the program at issue, plaintiffs were also concerned with the immediate impact of posting cash deposits which were based, in part, upon ITA's acknowledged errors.

tive review stage, however, ITA's net subsidy determinations have broader significance and effect which survive subsequent 751 reviews. If plaintiffs were to challenge the amount of net subsidies which ITA determines in a 751 administrative review, and if their challenge resulted in a remand for correction of legal and factual errors, ITA could neither negate that remand order, nor avoid an ultimate resolution of plaintiffs' challenge to the amount of net subsidies. While an intervening publication of a subsequent 751 review might limit the full effect of ITA's previous net subsidy determination (by basing future cash deposit rates upon the more recent 751 review) it would not eliminate its effect altogether. Entries covered by the period of that challenged 751 review would ultimately be liquidated in accordance with the court's final decision, so long as such liquidation were enjoined by the court (as it is in virtually all 751 cases). 19 U.S.C. § 1516a(c) & (e) (1982 & Supp. III 1985); *Zenith Radio Corp. v. United States,* 710 F.2d 806 (Fed.Cir.1983).

Accordingly, the court hereby vacates that portion of its decision of October 7, 1987, which remands this matter to ITA.

SO ORDERED.