VERSON, A DIVISION OF ALLIED PRODUCTS CORPORATION, The United Autoworkers and United Steelworkers of America (AFL–CIO/CLC), Plaintiffs,

v.

The UNITED STATES, Defendant,

and

Aida Engineering, Ltd., Mitsui & Co. (U.S.A.), Inc. and Kurimoto, Ltd., Defendant–Intervenors.

Slip Op. 98–30.
Court No. 96–11–02534.

United States Court of International Trade.

March 23, 1998.

Collier, Shannon, Rill & Scott, PLLC, (Paul C. Rosenthal and David C. Smith, Jr.), Washington, DC, for Plaintiffs.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (Randi–Sue Rimerman); Linda S. Chang, Of Counsel, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC, for Defendant.

Arent Fox Kintner Plotkin & Kahn, (Stephen L. Gibson), Washington, DC, for Defendant–Intervenor Aida Engineering, Ltd.

Barnes, Richardson & Colburn, (Brian F. Walsh), Chicago, IL, for Defendant–Intervenors Mitsui & Co. (U.S.A.) Inc. and Kurimoto, Ltd.

## OPINION

WALLACH, Judge.

### I

### INTRODUCTION

This matter is before the Court on the government's Motion To Dismiss for mootness ("Motion To Dismiss"). The Motion To Dismiss is granted.

### II

### BACKGROUND

Aida Engineering, Ltd. ("Aida Engineering") is a Japanese producer and exporter of Mechanical Transfer Presses ("MTPs"). Defendant's Motion To Dismiss For Lack Of Jurisdiction As Moot And Motion To Stay Briefing Upon The Merits Of The Case Pending A Decision Upon The Motion To Dismiss at 2. On February 16, 1990, the Department of Commerce ("Commerce") published an antidumping duty order on

MPTs from Japan. *Antidumping Duty Order: Mechanical Transfer Presses From Japan*, 55 Fed.Reg. 5,642. In response to Commerce's notice of opportunity to request an administrative review of the Antidumping Duty Order, Aida Engineering, Mitsui & Co. (U.S.A.) Inc. and petitioners requested that Commerce conduct a review for the period February 1, 1994 through January 31, 1995. *Mechanical Transfer Presses From Japan; Preliminary Results and Termination in Part of Antidumping Administrative Review*, 61 Fed.Reg. 15,034 (Apr. 4, 1996) ("*Preliminary Results*"). During that time period, Aida Engineering exported three MTPs to the United States. *Id.* at 15,035. Only two involved the sale of units for which an antidumping duty margin was calculated. *Id.* The third was excluded because it was returned after refurbishing. *Id.*

On April 4, 1996, the preliminary results of Commerce's review, conducted pursuant to the Uruguay Round Agreements Act amendments to the Tariff Act of 1930, were issued. *Preliminary Results*, 61 Fed.Reg. at 15,034. Because the units were built to each customer's specifications, a proper price-to-price comparison was not possible in either the home market or third countries. *Id.* at 15,-035. Therefore, as in prior proceedings involving large custom-built equipment and MTPs from Japan, the agency based normal value for Aida Engineering and Kurimoto, Ltd. on constructed value ("CV"). *Id.* In the *Preliminary Results*, Commerce excluded below-cost sales in its calculations of CV profit. Mem. from Urfer to Flannery, Mar. 27, 1996, at App. 3 of Plaintiffs' Motion for Judgment on the Agency Record.

In the final determination, Commerce included below-cost sales in its calculations of CV profits. The agency based the profit element of the CV calculation on the overall profit realized by Aida Engineering on all of its sales in the home market during the 1994–1995 review period, including sales that were at prices below Aida Engineering's cost

of production. *Mechanical Transfer Presses From Japan; Final Results of Antidumping Administrative Review*, 61 Fed.Reg. 52,910, 52,914 (Oct. 9, 1996) ("*Final Results*") (Comment 3); Mem. from Urfer to Flannery, Sept. 19, 1996, at Exh. 1 of Defendant's Proprietary Motion To Dismiss. Based on the comparison of CV to United States price, Commerce found that Aida Engineering had not been dumping MTPs during that period. *Final Results*, 61 Fed.Reg. at 52,916. The final dumping margin assigned to Aida Engineering on the two units sold to the United States was zero percent. *Id.*

On August 22, 1997, Plaintiffs, Verson, a division of Allied Products Corporation, the United Autoworkers, and the United Steelworkers of America, filed a motion for judgment on the agency record pursuant to C.I.T. Rule 56.2 to contest the methodology used by Commerce in its calculation of CV profit in its final margin calculations in the *Final Results*.[1]

The Defendant responded with a Motion To Dismiss and a Motion To Stay Briefing Upon The Merits Of The Case Pending A Decision Upon The Motion To Dismiss ("Motion To Stay").[2]

For the reasons set forth below, Defendant's Motion To Dismiss for mootness is granted.

## III

## DISCUSSION

### A

**This Court Lacks Jurisdiction To Reach The Merits Of This Action Because It Is Moot**

Defendant contends that this action is moot because there would be no practical effect on the dumping margin whether CV profits were derived by excluding below cost sales, as Plaintiffs seek, or including below cost sales, as Commerce did in the *Final*

---

1. The Plaintiffs seek judicial review of an administrative review that they allege to be inconsistent with prior Commerce practice. Specifically, the Plaintiffs argue that Commerce erred by including below-cost sales in its calculation of CV profit

in its final margin calculations for Aida Engineering.

2. On December 8, 1997, the Court granted Defendant's Motion To Stay.

*Results.* According to Defendant, regardless of which methodology is used, the dumping margin would be zero. Therefore, Defendant claims that Plaintiffs suffered no harm from the methodology used by Commerce and there is no case or controversy to be addressed by the Court.

Pursuant to Article III of the U.S. Constitution, the federal judiciary is only empowered to decide live cases or controversies. *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983). In order to satisfy the case or controversy requirement, "a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow* at 70, 104 S.Ct. 373. If "the issue[ ] presented [is] no longer 'live' or the parties lack a legally cognizable interest in the outcome", the case is moot. *PPG Industries, Inc. v. United States,* 11 CIT 303, 306, 660 F.Supp. 965, 968 (1987) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)).

One corollary to the mootness doctrine is that federal courts will not issue advisory opinions. *PPG Industries, Inc.,* 11 CIT at 303, 660 F.Supp. at 968 (quoting *Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). For a federal court to have jurisdiction to consider a case, "a suit 'must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (quoting *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461,

81 L.Ed. 617 (1937)). In particular, a federal court does not have the "power to render an advisory opinion on a question simply because [it] may have to face the same question in the future." *Nat'l Labor Relations Board v. Globe Security Services, Inc.,* 548 F.2d 1115, 1118 (3rd Cir.1977).

A narrow exception to the mootness doctrine exists for issues that are " 'capable of repetition, yet evading review.' " *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (quoting *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911)). This exception is applicable in cases similar to *Roe* where "litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied." *Id.*

In their Points and Authorities, Plaintiffs place the weight of their opposition to the Motion To Dismiss for mootness on the argument that the issue in this case falls within the "capable of repetition, yet evading review" exception. However, as Plaintiffs conceded at oral argument, this case "is not one that is inherently evasive of review." Unlike a human pregnancy that has such a short gestation period that it will come to term before the usual appellate process is complete, the issues in the instant case could be subject to judicial review in the future.[3] An antidumping determination is not of too short a duration to prevent complete judicial review, and the issue raised is likely to be subject to agency action in the future. Therefore, although the issue presented is capable of repetition, it will not evade review.

The fact that an issue presented for review may need to be addressed in the future does not by itself create a live case or controversy.[4] A case will be dismissed as moot when the challenge presented to the Court cannot result in a meaningful remedy.

---

**3.** At oral argument, held on February 6, 1998, Plaintiffs agreed that the issue could be addressed in a future case based on different numbers.

**4.** Plaintiffs contend that their injury arises from their inability to obtain judicial review to demonstrate that Commerce applied the wrong methodology and that they will be forced to revisit the issue in subsequent reviews. The Court finds this claim of injury to be baseless because, as Plaintiffs admit in their Points and

Authorities, Commerce did not follow the alleged "improper precedent" in the subsequent 1995–96 administrative review of the *Order in Mechanical Transfer Presses from Japan; Final Results of Antidumping Administrative Review,* 62 Fed.Reg. 11,820 (Mar. 13, 1997) ("*Second Final Results* "). *See* Plaintiffs' Response In Opposition To Defendant's Motion To Dismiss at 6 [hereinafter "Plaintiffs' Response"]. In that review, Commerce used the methodology Plaintiffs prefer: excluding below cost sales from the CV

*See NSK Ltd. v. United States*, 17 CIT 488 (1993), *SKF USA, Inc. v. United States Dep't of Commerce*, 16 CIT 961, 806 F.Supp. 1021 (1992), *McKechnie Brothers [N.Z.] Ltd. v. United States Dep't Of Commerce*, 14 CIT 269, 735 F.Supp. 1066 (1990), and *Alhambra Foundry v. United States*, 10 CIT 330, 635 F.Supp. 1475 (1986).

As the government has demonstrated, the recalculation of CV profit based upon the methodology Plaintiffs seek would not alter the duty margin; it would remain at zero. Whichever methodology Commerce used Plaintiffs would not have been subjected to any monetary harm. Thus, no live case or controversy exists because there is no actual injury that can be redressed by a favorable judicial decision.[5]

▮ Finally,[6] Plaintiffs claim that the government has failed to meet the burden of proof for proving mootness applied in *Daewoo Electronics Co. v. United States*, 13 CIT 253, 278, 712 F.Supp. 931, 954 (1989), *rev'd on other grounds*, 6 F.3d 1511 (Fed.Cir.1993). In *Daewoo*, the Court applied the two prong test of *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), for determining mootness following voluntary cessation of allegedly illegal conduct.[7]

Plaintiffs use *County of Los Angeles* as if it applied to all cases where mootness is raised. However, the courts in *County of Los Angeles* and *Daewoo* were addressing only the situation where the government acts illegally, ceases the conduct during the pendency of the litigation, and, then, argues that the issue of whether its conduct was improper is moot. *See id.* and *Daewoo*, 712 F.Supp. at 953.[8]

Here, Commerce was authorized to perform a constructed value analysis. *See* 19 U.S.C. 1677b(4) and 1677b(e) (1994). Unlike *County of Los Angeles* and *Daewoo*, the substantive issue in this case is not whether the calculation was legal, but how the government interpreted what it was authorized to do. Since the government's conduct was authorized and there was no cessation of illegal conduct, this case is not analogous to *County of Los Angeles* or *Daewoo*, and the two prong test is not applicable.

**B**

**Defendant May Rely Upon Calculations Not In, But Derived From, The Administrative Record To Support Its Argument**

▮ In its Points and Authorities, Defendant uses data in the administrative record

---

profit calculation. *See Second Final Results*, 62 Fed.Reg. at 11,822.

**5.** To render a decision based upon the possible harm precedent could cause in a hypothetical, future case would constitute an advisory opinion. As stated earlier, a federal court does not have the "power to render an advisory opinion on a question simply because [it] may have to face the same question in the future." *Nat'l Labor Relations Board*, 548 F.2d at 1118.

**6.** In their Points and Authorities, Plaintiffs also claim that the government cannot (1) argue in an administrative review that it will not reconcile an earlier determination with its approach in that review because the earlier results are in litigation and, then, (2) argue in the proceeding litigating the earlier results that the issue should be dismissed as moot. Plaintiffs' Response at 6. At oral argument, Plaintiffs conceded that they had no authority to support this proposition.

**7.** As a general rule, the voluntary cessation of allegedly illegal conduct does not deprive the tribunal of the power to decide a case. *County of Los Angeles* at 631. However, "jurisdiction,

properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (citations omitted).

**8.** For example, in *County of Los Angeles*, the county used a civil service examination to screen job applicants that discriminated against minorities rather than evaluating future job performance. *See County of Los Angeles* at 628–29. However, the use of the examination ceased after commencement of the litigation because the county instituted an efficient, nonrandom method of screening job applicants and increasing minority representation. *Id.* at 632, 99 S.Ct. 1379. In *Daewoo*, the International Trade Administration refused to disclose the computer programs and printouts which contained the calculations of the final results of the administrative review at issue. *Daewoo*, 13 CIT at 278, 712 F.Supp. at 953. However, as a result of bringing the action challenging the administrative review, the plaintiffs obtained access to the documents in question. *Id.*, 13 CIT at 278–79, 712 F.Supp. at 953–54.

to recalculate CV profit according to what Plaintiffs consider to be the correct methodology. Defendant uses the results of this recalculation to support its argument that excluding below-cost home market sales would not change Aida Engineering's antidumping margin for the 1994–95 review.

 Plaintiffs argue that the data relied upon by the government is not part of the administrative record, as defined in CIT Rule 71 and Section 516A(b)(2) of the Tariff Act of 1930, and, thus, should not be considered by the Court.[9] However, at oral argument, Plaintiffs acknowledged that the underlying data was in the record. Instead, they argued that the government could not base its argument upon recalculations that were not part of the administrative record.[10] It is axiomatic that, absent surprise or legitimate evidentiary objections, counsel may use properly admitted evidence in any illustrative manner so long as it is relevant. *See* Fed. R.Evid. 402.[11]

## IV

### CONCLUSION

For the foregoing reasons, Defendant's Motion is granted, and the case is dismissed in whole for lack of jurisdiction.

9. According to Plaintiffs, the government's approach of *sua sponte* recalculating CV profit and avoiding review by using the results to demonstrate that applying the alternative methodology would have no impact on the margin would allow Commerce to make erroneous determinations year after year, thereby establishing an "administrative practice" that would be used against attempts to change the practice. Plaintiffs argue that this approach would encourage litigation because rather than simply appealing single issues plaintiffs would have an incentive to raise multiple issues in order to avoid the claim that the single issue raised does not move the margins sufficiently to make a difference. At oral argument, other than a generalized fairness argument, Plaintiffs could not cite to any authority to support this proposition.

10. Subsequently, they conceded in oral argument that they had no authority to support the proposition that government counsel could not use

numbers found within the administrative record to make illustrative calculations and that for mootness purposes the actual argument, in this case the recalculations, did not have to be in the record.

11. At the court's discretion, calculations are admissible into evidence if the underlying data upon which they are based is admissible. *Cf.* Fed.R.Evid. 1006 and *United States v. Loney*, 959 F.2d 1332, 1341 (5th Cir.1992) ("Once the underlying data is admissible under the business records exception, a summary of that data can be admitted under Fed.R.Evid. 1006, which permits the parties to present a 'chart, summary, or calculation' where '[t]he contents of voluminous writings . . . cannot conveniently be examined in court.'") *See also United States v. Nivica*, 887 F.2d 1110, 1126 (1st Cir.1989) ("Inasmuch as the summary charts were adequately grounded in the evidence, their admissibility was committed to the district court's sound discretion.").