**Slip Op. 99-126**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| _____ | : | |
| EVEREADY BATTERY COMPANY, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES, | : | Court No. 98-09-02816 |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| CHEMETALS, INC. and KERR-MCGEE | : | |
| CHEMICAL, LLC, | : | |
| | : | |
| Defendant-Intervenors. | : | |
| _____ | : | |

[Defendant's motion to dismiss granted.]

Dated: November 23, 1999

Ablondi, Foster, Sobin & Davidow (Gary L. Bohlke) for plaintiff.

Lyn M. Schlitt, General Counsel, James A. Toupin, Deputy General Counsel, United States International Trade Commission (Cynthia P. Johnson), for defendant.

Gardner, Carton & Douglas (W.N. Harrell Smith, IV and William M. Ejzak) for defendant-intervenor Kerr-McGee Chemical LLC.

Squire, Sanders & Dempsey, L.L.P. (Ritchie T. Thomas) for defendant-intervenor, Chemetals, Inc.

## OPINION

**RESTANI, Judge:** Plaintiff Eveready appeals a decision of the International Trade Commission ("ITC" or "the Commission") denying Eveready's request for a changed circumstances review pursuant to 19 U.S.C. § 1675(b) (1994). Eveready seeks this review for an antidumping duty order on electrolytic manganese dioxide ("EMD") imported from Greece, issued on April 17, 1989. See EMD from Greece, 54 Fed. Reg. 15,243 (Dep't Commerce 1989). The Commission has made a motion to dismiss, arguing that its institution of a sunset review pursuant to 19 U.S.C. § 1675(c) (1994) renders Eveready's action before this court moot.

### Background

Eveready Battery Company is one of three U.S. producers of EMD,[1] and a purchaser of EMD from both U.S. and foreign manufacturers. EMD from Greece and Japan, 63 Fed. Reg. 30,254, 30,255 (ITC 1998) (request for comments regarding institution of section 751(b) review). On May 26, 1998 Eveready filed a request with the ITC for a changed

---

[1] "EMD is a major ingredient in the manufacture of dry cell batteries used in portable electronic devices." EMD from Greece and Japan, 63 Fed. Reg. 30,254, 30,255 (ITC 1998) (request for comments regarding institution of section 751(b) review).

circumstances review regarding EMD imports from Greece.  Id.
at 30,255.  The Commission published its notice seeking
comments on Eveready's request on June 3, 1998.  The changed
circumstances in Eveready's request alleged that there had
been structural changes in battery consumption, and argued
that the revocation of the existing antidumping duty order for
Greece would be "limited to such a small quantity that it
could have no material impact on EMD producers in the United
States."  Id.  The Commission asked that submissions also
address the possibility of the ITC self-initiating a review of
the outstanding order on EMD from Japan.  Id.

Two months later, the Commission dismissed Eveready's
request for the institution of a changed circumstances review.
EMD from Greece and Japan, 63 Fed. Reg. 43,192 (ITC 1998)
(dismissal of request for institution of section 751(b) review
investigation).  Eveready challenged the determination in this
court, and made a motion for summary judgment requesting that
the court order the Commission to conduct a changed
circumstances review.[2]

---

[2]     Defendant-intervenors, Chemetals, Inc. and Kerr-McGee Chemical, LLC, filed a response to Eveready's motion for summary judgment, but have not participated in the motion to dismiss.

On May 3, 1999, the ITC instituted a review of EMD from Greece and Japan, pursuant to 19 U.S.C. § 1675(c), "to determine whether revocation of the antidumping duty orders on [EMD] from Greece and Japan would be likely to lead to continuation or recurrence of material injury." EMD from Greece and Japan, 64 Fed. Reg. 23,675, 23,675 (ITC 1999) (institution of five year reviews). The Commission then moved to dismiss Eveready's complaint, on the grounds that institution of a 19 U.S.C. § 1675(c) review rendered Eveready's action before the court moot. The court's Order of July 20, 1999 denied ITC's motion without prejudice to renewal "if a full review [was] initiated under sunset provisions [19 U.S.C. § 1675(c)]." On August 25, 1999 the Commission published its determination to conduct a full five-year review of EMD from Greece and Japan, pursuant to 19 U.S.C. § 1675(c)(5). EMD from Greece and Japan, 64 Fed. Reg. 46,407 (ITC 1999) (notice of ITC to conduct full five-year reviews). The Commission now renews its motion to dismiss on the grounds that its review of EMD from Greece and Japan pursuant to 19 U.S.C. § 1675(c) moots Eveready's appeal of the Commission's denial of a review pursuant to 19 U.S.C. § 1675(b).

### Discussion

The Commission argues that the institution of a full 19 U.S.C. § 1675(c) review, a "sunset" review, gives Eveready what it is requesting, namely, an investigation as to whether revocation of the antidumping order would result in the continuance or recurrence of material injury. In its response to the Commission's motion to dismiss, Eveready argues that a changed circumstance review under 19 U.S.C. § 1675(b) is "fundamentally different" from a five-year review under 19 U.S.C. § 1675(c) and, consequently, that the Commission's initiation of a sunset review does not render this action moot.

Because Article III of the Constitution requires that the court adjudicate only a presently pending case or controversy, jurisdiction is improper if the action is moot.[3] See Associacao Dos Industriais de Cordoaria E Redes v. United States, 17 CIT 754, 759, 828 F. Supp. 978, 984 (1993) (citations omitted). The test for whether an action is moot is whether a present controversy exists as to which effective

---

[3]    The court has subject matter jurisdiction over Eveready's complaint pursuant to 28 U.S.C. § 1581(c) (1994) and would review the ITC's decision in the changed circumstances review pursuant to the arbitrary and capricious standard of review. See 19 U.S.C. § 1516a(b)(1)(A) (1994).

relief may be granted.  Id.; see also Verson v. United States, 5 F. Supp.2d 963, 966 (Ct. Int'l Trade 1998) ("case will be dismissed as moot when the challenge presented to the Court cannot result in a meaningful remedy.") (citations omitted).

If the Commission's institution of a full sunset review accords Eveready all of the relief it sought by suing for the institution of a changed circumstances review, the current action will be rendered moot.  See 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.2, at 238 (2d ed. 1984) ("Action by the defendant that simply accords all the relief demanded by the plaintiff may have the same effect as settlement [which renders an action moot].")  The court will not order the Commission to do "that which it has already done."  See Huron v. Richards, 997 F.2d 1168, 1175 (6th Cir. 1993) (plaintiffs' request that FAA conduct an environmental assessment ("EA") rendered moot by agency's issuance of a final environmental impact statement ("EIS") because "agency has now done all that the regulations would require if [an] . . . EA had indicated the need for an EIS . . . .  Nothing would be gained by ordering an EA").

A changed circumstances review of an antidumping duty order is appropriate whenever Commerce or the Commission

receives information, or a request from an interested party, which shows changed circumstances sufficient to warrant a review of a determination which resulted in an antidumping duty order.  19 U.S.C. § 1675(b)(1)(A).  In a changed circumstances review the party seeking revocation of an antidumping order has the burden of persuasion with respect to the sufficiency of changed circumstances to warrant such revocation.  19 U.S.C. § 1675(b)(3)(A).  The Commission conducts its review to determine whether revocation of the order is likely to lead to continuation or recurrence of material injury.  19 U.S.C. § 1675(b)(2)(A).

The passage of the Uruguay Round Agreements Act ("URAA") created a new 19 U.S.C. § 1675(c), which requires that Commerce and the Commission automatically conduct a five-year review of an antidumping duty order.  These reviews are commonly referred to as "sunset reviews."  In conducting a sunset review, Commerce and the Commission must determine whether revocation of the order would be likely to lead to continuation or recurrence of dumping and of material injury. See 19 U.S.C. § 1675(c)(1).  The automatic initiation of sunset reviews avoids placing an unnecessary burden on the domestic industry and promotes efficiency of administration.

See Statement of Administrative Action ("SAA") at 879,

reprinted in 1994 U.S.C.C.A.N. 3773, 4205-06.[4]

   The antidumping duty determination at issue in this case

was already in effect prior to the passage of the URAA, and is

therefore considered a transition order.[5]  See 19 U.S.C. §

1675(c)(6)(C)(ii).  The statute requires that the Commission

and Commerce commence a review of transition orders by the

forty-second month after the date such orders are issued, with

a review of all transition orders having been initiated by the

fifth anniversary after such orders are issued.  See 19 U.S.C.

§ 1675(c)(6)(A)(i).

---

   [4]  "[T]his statement represents an authoritative
expression by the Administration concerning its views
regarding the interpretation and application of the Uruguay
Round agreements, both for purposes of U.S. international
obligations and domestic law.  Furthermore, the Administration
understands that it is the expectation of the Congress that
future Administrations will observe and apply the
interpretations and commitments set out in this Statement."
SAA at 656, 1994 U.S.C.C.A.N. at 4040.

   [5]    The standards set out in 19 U.S.C. § 1675(c)(1) for
a sunset review are applicable to reviews of transition orders
as well.  The only significant difference in a sunset review
of a transition order is the timing of the review.  Transition
orders are treated as issued on the date the WTO Agreement
entered into force with respect to the United States.  See 19
U.S.C. § 1675(c)(6)(D).  The order is therefore deemed to have
issued on January 1, 1995, the date the WTO agreement entered
into force with respect to the United States.  See Gerald
Metals, Inc. v. United States, 132 F.3d 716, 718 n.* (Fed.
Cir. 1997).

The standard applied by Commerce and the Commission in conducting a sunset review is the same as the standard applied in a changed circumstances review.  Specifically, the Commission must determine whether revocation of the order would likely lead to continuation or recurrence of material injury.  Compare 19 U.S.C. § 1675(b)(2)(A) with 19 U.S.C. § 1675(c)(1).  Moreover, 19 U.S.C. § 1675a (1994) groups both sections, § 1675(b) and (c), together in stating special rules for determining the likelihood of continuation or recurrence of material injury.  See SAA at 883, 1994 U.S.C.C.A.N. at 4208 ("new section 752 [1675a] . . . establishes standards to be applied by Commerce and the Commission in conducting changed circumstances and five-year [sunset] reviews.") (emphasis added).

In conducting a sunset or changed circumstances review of an antidumping order, the Commission is required to consider the same factors, namely, the likely volume of imports, price effects, and impact of imports of the subject merchandise on the industry if the order is revoked.  See 19 U.S.C. § 1675a(a)(1).  The only difference of significance in the two types of reviews is that Eveready would bear the burden of persuasion in a changed circumstances review, but has no such burden in a sunset review.  See 19 U.S.C. § 1675(b)(3)(A).

This difference makes a sunset review more favorable to Eveready than a changed circumstances review.[6] Eveready nevertheless insists that the two reviews are different and offers two reasons to support this argument. Eveready states that the Commission may not cumulatively assess the volume and effect of imports of EMD from all countries in a changed circumstances review, while it is authorized to do so in a sunset review. Eveready also argues that in considering the magnitude of the dumping margin, the margin considered in a sunset review is different from the dumping margin considered in a changed circumstances review. Both of these arguments, however, are without merit.

## A.  Cumulation

Eveready argues that in a sunset review, the Commission is authorized to cumulate imports to determine whether there would be a continuation or recurrence of injury, whereas in a

___

[6]    The Commission also notes another difference which could benefit Eveready in this case. If the Commission determines in the sunset review that revocation of the order would not likely lead to continuation or recurrence of material injury, the revocation of the order will be made effective retroactively to January 1, 2000. See 19 C.F.R. § 351.222(i)(2)(ii) (1999) (revocation of transition orders effective on January 1, 2000). By contrast, there is no retroactive provision when the Commission revokes an order pursuant to a changed circumstances review. See 19 C.F.R. § 351.222(g)(4) (revocation effective on date of notice of revocation).

changed circumstances review, the Commission is "forbidden by law" to cumulate.  See Pl.'s Resp. Br. at 5-6.  This argument is unsupported.  Pursuant to the statute, the Commission has the discretion to decide whether to cumulate in both types of reviews.  The statute provides in relevant part:

> [T]he Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews under section 1675(b) or (c) of this title were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States market.

19 U.S.C. § 1675a(a)(7) (emphasis added).  The SAA also notes that "[n]ew section 752(a)(7) [1675a(a)(7)] grants the Commission discretion to engage in a cumulative analysis." SAA at 887, 1994 U.S.C.C.A.N. at 4212 (emphasis added). Because the Commission has such discretion, it is not obliged to cumulate in either a changed circumstances or sunset review, providing Eveready with the same relief under either type of review.

Eveready contends that since there was only one changed circumstances review requested for Greece, if this court remanded to the Commission for the initiation of a changed circumstances review, the review would only be applicable to Greece.  This argument ignores the fact that the Commission has the authority to self-initiate a changed circumstances

review in addition to initiating a review in response to a

formal request.  See 19 C.F.R. § 207.45(c) (1999).[7]  The

Commission has previously exercised its authority to self-

initiate a review of multiple countries where a request for

review was received for only one country.  See Titanium Sponge

from Japan, Kazakhstan, Russia, and Ukraine, USITC Pub. 3119,

at 1 n.2, Inv. Nos. 751-TA-17-120 (Aug. 1998) (request filed

with respect to Russia and Commission self-initiated review

with respect to three other countries subject to orders).

When the Commission published a notice in the federal

register seeking comments on Eveready's request for a changed

circumstances review with regard to EMD from Greece, it also

asked that submissions address the possibility of the

Commission self-initiating a review of EMD from Japan.  EMD

from Greece and Japan, 63 Fed. Reg. at 30,255.  The Commission

never initiated a changed circumstances review for either

---

[7]     This regulation provides in relevant part:

Within thirty (30) days after the close of the period for
public comments following publication of the receipt of a
request, the Commission shall determine whether the
request shows changed circumstances sufficient to warrant
a review and, if so, shall institute a review
investigation.  The Commission may also institute a
review investigation on its own initiative.

19 C.F.R. § 207.45(c).

Greece or Japan because it determined that there were not changed circumstances sufficient to warrant institution of a review under 19 U.S.C. § 1675(b).  EMD from Greece and Japan, 63 Fed. Reg. at 43,192.  Moreover, the ITC noted that the request only concerned imports from Greece, but nevertheless dismissed the 19 U.S.C. § 1675(b) investigation with regard to both Greece and Japan.  Id. at 43,192 n. 1 ("The request concerned only imports from Greece.  However . . . the Commission also solicited comments on the possibility of self-initiating a review of the outstanding order on imports from Japan.").

Eveready bases its argument forbidding cumulation in a changed circumstances review on the language in 19 U.S.C. § 1675a(a)(7) which permits cumulation "with respect to . . . reviews . . . initiated on the same day."  19 U.S.C. §1675a(a)(7).  Eveready states that because a review of Japan was not requested on the same day, a changed circumstances review would only review EMD from Greece.  Pl.'s Resp. Br. at 7.  Eveready mistakenly characterizes a request for a review as the initiation of a review to support this contention.  The Commission has thirty days after the close of the period for public comments following the request for a review to determine whether sufficient changed circumstances exist to

warrant a review, after which time it may institute a review. See 19 C.F.R. § 207.45(c).  Determining that sufficient changed circumstances did not exist, the Commission dismissed Eveready's request before instituting a review.   If the court remanded to the Commission to initiate a changed circumstances review, this would be the first time such a review was initiated and, at that time, the Commission could decide to self-initiate a review of EMD from Japan on the same day.

The Commission correctly maintains that if it is required to reconsider its decision not to initiate a changed circumstances review with respect to EMD from Greece, it also has the authority to reconsider whether to self-initiate a review with respect to EMD from Japan at the same time. See Def.'s Reply Br. at 5.  In such a case, the statute specifically grants the Commission the discretion to cumulate imports from Greece and Japan.  See 19 U.S.C. § 1675a(a)(7). Therefore, under both a changed circumstances review and a sunset review the Commission has the authority to cumulatively assess the volume and effect of imports from all countries. Eveready's arguments that cumulation differs under a changed circumstances review from cumulation under a sunset review therefore fail.

## B.    Magnitude of the Margin

Eveready also argues that a fundamental difference between a sunset review and a changed circumstances review is the appropriate margin to apply in the ITC's consideration of the magnitude of the dumping margin.  Eveready argues that in a sunset review the requisite dumping margin which will be considered is "normally" the margin from the original investigation, pursuant to 19 U.S.C. § 1675a(c)(3), whereas in a changed circumstances review the Commission is required to consider the most recent margin calculation, including a margin from an annual administrative review, pursuant to 19 U.S.C. § 1677(35)(C)(iii) (1994).  This argument is also without merit.

As with cumulation, in determining the likelihood of the continuation or recurrence of injury under sections 1675(b) and (c), the Commission has discretion whether to consider the magnitude of the margin of dumping.  "In making a determination under section 1675(b) or (c) . . . the Commission may consider the magnitude of the margin of dumping or the magnitude of the net countervailable subsidy."  19 U.S.C. § 1675a(a)(6) (emphasis added); see also SAA at 887, 1994 U.S.C.C.A.N. at 4211 ("[n]ew section 752(a)(6) [1675a(a)(6)] permits the Commission to consider the magnitude

of the dumping margin or net countervailable subsidy in determining the likely continuation or recurrence of injury.") (emphasis added).  While Commerce under 19 U.S.C. § 1675a(c)(3) is to provide the Commission with information on the likely dumping margin in the event of cessation of antidumping duty discipline, the Commission is not required to consider the margin in making its determination as to whether there is likely to be a continuation or recurrence of injury. See 19 U.S.C. § 1675a(a)(6).  The Commission has exercised this discretion in recent changed circumstances reviews and sunset reviews by not relying on the margin information in determining the likely continuation or recurrence of injury.[8]

Because of the particular fact pattern at issue here, if the Commission did choose to rely on the magnitude of the dumping margin in either the sunset review or a changed circumstances review it would use the same margin.

_____

[8]  In these determinations, the Commission simply noted the applicable dumping margin.  In none of these cases did the Commission rely on or analyze the effect of the noted margins in determining the likely continuation or recurrence of material injury.  See Titanium Sponge from Japan, Kazakhstan, Russia, and Ukraine, USITC Pub. 3119, at 13 n.72, Inv. Nos. 751-TA-17-20 (changed circumstances review) (Aug. 1998); Barbed Wire and Barbless Wire Strand from Argentina, USITC Pub. 3187, at 9 n.59, Inv. No. 731-TA-208 (sunset review) (May 1999); Elemental Sulfur from Canada, USITC Pub. 3152, at 13 n.35, Inv. No. AA1921-127 (sunset review) (Jan. 1999).

Specifically, for a changed circumstances review, 19 U.S.C. §

1677(35)(C)(iii) defines the margin of dumping which may be

used by the Commission as:

> the most recent dumping margin or margins determined by
> the administering authority under section 1675a(c)(3) of
> this title, if any, or under section 1673b(b)
> [preliminary determination by Commerce] or 1673d(a)
> [final determination by Commerce] of this title.

19 U.S.C. § 1677(35)(C)(iii).  For a sunset review, the margin

which may be used is:

> the dumping margin or margins determined by the
> administering authority under section 1675a(c)(3) of this
> title.

19 U.S.C. § 1677(35)(C)(iv).  The SAA states that the statute

defines the magnitude of the dumping margin for purposes of

the Commission's analysis as, "in a changed circumstances

review, the margin(s) most recently determined by Commerce;

and in a five-year review, the margin(s) determined by

Commerce pursuant to its own sunset analysis under section

752(c)(3) [19 U.S.C. § 1675a(c)(3)]."[9]  SAA at 851, 1994

U.S.C.C.A.N. at 4184.

Eveready argues that it is a foregone conclusion that in

conducting a changed circumstances review, the Commission

would have to revoke the order for EMD from Greece.  Eveready

bases this argument on the fact that the most recently

calculated margin available for EMD from Greece for respondent

Tosoh Hellas is zero percent, the margin preliminarily

determined in the latest annual administrative review under 19

U.S.C. § 1675(a), although the all others rate in this annual

review was 36.72 percent.[10]  See EMD from Greece, 64 Fed. Reg.

_____

[9]  Under 19 U.S.C. § 1675a(c)(3), Commerce "normally" is
to choose the margin that is likely to prevail in the event of
revocation from among the final determination margin, an
annual review margin or a changed circumstances margin.  The
SAA and the House Report to the URAA emphasize that Commerce
"normally will select the rate from the investigation, because
that is the only calculated rate that reflects the behavior of
exporters . . . without the discipline of an order . . . in
place."  SAA at 890, 1994 U.S.C.C.A.N. at 4214; H.R. Rep. No.
103-826, pt. 1, at 64 (1994).  "In certain instances, a more
recently calculated rate may be more appropriate.  For
example, if dumping margins have declined over the life of an
order and imports have remained steady or increased, Commerce
may conclude that exporters are likely to continue dumping at
the lower rates found in a more recent review."  Id.; see
generally Michael O. Moore, Antidumping Reform in the United
States - A Faded Sunset, Journal of World Trade, Aug. 1999, at
1 (discussing legislative history regarding application of
margin in sunset reviews).

[10]   The same margins were applied in the just issued
                                                 (continued...)

25,008, 25,010-11 (Dep't Commerce 1999) (preliminary results of antidumping duty admin. rev.). Eveready states that in conducting a sunset review, the Commission would consider the margin determined in the original investigation, which was 36.72 percent. See EMD from Greece, 54 Fed. Reg. at 15,244 (setting forth margins for Tosoh Hellas and all others in original LTFV investigation). See also supra note 9.

The statute, however, indicates that in a changed circumstances review the Commission may consider the sunset margin if one exists. See 19 U.S.C. § 1677(35)(C)(iii). In fact, once the sunset margin is calculated it appears that is the only margin which may be used in the changed circumstances review, because it would be the most recent margin available of the ones listed in the statute. The statute is most naturally read to authorize only the use of the sunset margin itself or the preliminary or final margin from the original investigation, whichever is the latest margin. The SAA might be read as indicating that the statute means the Commission may consider the most recent margin of any type, including an

---

[10](...continued)
final results from this annual administrative review. See EMD from Greece, 64 Fed. Reg. 62,169, 62,175 (Dep't Commerce 1999).

annual review margin if it is the latest margin, but it is difficult to read the statute that way.

Section 1677(35)(C)(iii) refers to annual review margins indirectly, that is, if such a margin is chosen by Commerce in a sunset review under section 1675a(c)(3). Reading section 1677(35)(C)(iii)'s reference to section 1673a(c)(3) to mean that the Commission may consider any of the margins listed in section 1675a(c)(3), rather than that margin chosen by Commerce, raises another issue. Section 1675a(c)(3) states that Commerce may choose margins determined in final determinations pursuant to 19 U.S.C. § 1673d, yet section 1677(35)(C)(iii) also specifically includes these section 1673d margins. The only apparent way to avoid this redundancy is to read the inclusion of section 1675a(c)(3) in section 1677(35)(C)(iii) as referring to the sunset margin chosen by Commerce, and not the various types of margins which Commerce may provide to the Commission, as listed within section 1675a(c)(3).

Moreover, if Congress intended that the difference in the margins which the Commission could consider in simultaneous sunset and changed circumstances reviews to be a significant difference between the two types of reviews, which serve the same purpose, the statute would be drafted with greater

precision to reflect this intent.  The court, however, need not decide whether an annual review margin not selected by Commerce in a sunset review can be used in a changed circumstances review if it is the latest margin.[11]  In this case the sunset review margin will be the most recent margin. Thus, in the seemingly unlikely event that the Commission were to employ a margins analysis in the changed circumstances review here, it would use the sunset margin.[12]

### Conclusion

The court finds that in this case the sunset review of the antidumping order will provide the same relief as a changed circumstances review.  The purpose of both reviews is to determine whether revocation of an antidumping order is

---

[11]    In any case, this issue was not fully briefed. Plaintiff should not be permitted to rely on conclusory arguments to defeat the motion to dismiss.

[12]    Plaintiff might argue that the Commission, if it were compelled to proceed with a changed circumstances review, would be bound to use the latest margin available at the time that the changed circumstances review should have taken place. First, plaintiff has not made this argument and it is not clear the court would require this.  Second, plaintiff has not established that the changed circumstances review would have been completed prior to the availability of the sunset margin. Third, the court believes it is more likely that in the absence of a sunset margin, if it were to use any margin, the Commission would use the 36.72 percent margin because that is what the statute seems to require, as it is the final original margin.  (It is also the latest all others rate from the most recent annual review.)

likely to lead to a continuation or recurrence of material injury, and in making this determination the statute provides that the Commission will consider the same criteria.  If the court found that ITC should conduct a changed circumstances review, the court would simply be ordering the ITC to do that which it has already done by initiating a full sunset review. Nothing would be gained by the institution of a changed circumstances review.  The Commission's renewed motion to dismiss the complaint on grounds of mootness is therefore granted.


                                    _____
                                        Jane A. Restani
                                           JUDGE


Dated:  New York, New York

        This 23rd day of November, 1999.